```
   IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

      MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


THE PRUDENTIAL INSURANCE    )
COMPANY OF AMERICA,         )
                            )
     Plaintiff,             )    CIVIL ACTION NO.
                            )      1:08cv474-MHT
     v.                     )           (WO)
                            )
WINONA CHUMNEY, etc.,       )
et al.,                     )
                            )
     Defendants.            )
```

                            OPINION

The final issue presented to the court is whether decedent Christine Ann Chumney's two minor children and her estate may recover Voluntary Accidental Death and Dismemberment ("AD&D") and Group Universal Life ("GUL") benefits they claim are due under an insurance policy Chumney entered into with Prudential Insurance Company of America.  As guardian of the children and representative of the estate, Chumney's sister-in-law has filed a counterclaim on their behalf against Prudential for these benefits.  This counterclaim, which is the only remaining claim in this litigation, arises under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Jurisdiction is proper under 29 U.S.C. § 1132(e). For the reasons that follow, the court holds that Prudential is entitled to judgment in its favor on Chumney's sister-in-law's counterclaim.

## I. BACKGROUND

### A.

Chumney began working for HealthSouth Corporation in February 2004. At that time, Prudential provided life insurance benefits to qualifying employees of HealthSouth under a group contract. As a new hire, Chumney signed up for Basic Employee Term Life ("Basic Life") insurance in the amount of $ 51,000, as well as other benefits. Although she was given the option to enroll for AD&D and GUL benefits, she did not do so.

In October 2005, HealthSouth conducted an annual enrollment period for optional insurance benefits. During that month, Chumney had the opportunity to enroll

in benefits for 2006 that she had not previously elected. HealthSouth mailed its employees various materials, including a "FlexChoice" booklet (which explained the available benefits options) and an "Annual Enrollment Worksheet." The cover page to the enrollment worksheet instructed employees to complete the sheet and return it to a HealthSouth representative. The worksheet, which was sent to Chumney and personalized for her, stated under the "EMPLOYEE AD&D INSURANCE" heading:

> "Your current AD&D coverage is: No coverage. This coverage will continue in 2006 unless you make a new election. To make a new election, mark the desired coverage option box. Prudential will mail an Enrollment Form to you once we notify them of your new coverage election."

Record (Doc. No. 74), Exh. 1, p. 5. In the boxes below, Chumney checked the option for $ 200,000 of AD&D coverage. Similarly, in the "EMPLOYEE GROUP UNIVERSAL LIFE INSURANCE" section, the worksheet provided that Chumney's current coverage was "No Coverage" and instructed: "If you request to increase your current

3

coverage, Prudential will mail an Enrollment Form and Health Questionnaire to you once we provide them with your enrollment request." Record (Doc. No. 74), Exh. 1, p. 4. Chumney checked the option for $ 140,000 of GUL coverage.

The parties agree that Chumney submitted this worksheet (requesting $ 200,000 of AD&D and $ 140,000 of GUL benefits) to the appropriate HealthSouth representative, who in turn transmitted Chumney's elections to Prudential. The central dispute of this case is whether Chumney's completion and submission of that worksheet effected her enrollment in the requested benefits.

Representatives of both HealthSouth and Prudential agree that completion of the worksheet was insufficient to enroll for AD&D and GUL benefits; rather, they state that the purpose of the sheet was to enable HealthSouth to transmit employee enrollment requests to Prudential, which would in turn mail the appropriate enrollment

materials to the requesting employee. As described above, the worksheet itself indicated that Prudential would mail additional materials after receiving the elections made on the worksheet. Likewise, the "FlexChoice" booklet, which was mailed to employees, provided, under the "Next Steps" heading, that additional forms were needed to complete enrollment.

After Prudential would receive employee requests from HealthSouth, the insurance company's automated computer system would generate a letter addressed to the employee; enclose the letter and an enrollment form in an envelope; and have the materials mailed to the employee. Prudential performed quality-assurance checks on the automated system to ensure its proper functioning. Here, after Prudential received Chumney's requests, it generated such a letter for her, dated December 22, 2005. The letter instructed Chumney to complete the enclosed form and provided: "Once we receive your completed enrollment form, we will process your request and provide

confirmation of your approved coverage amounts." Record (Doc. No. 74), Exh. 3, p. 96. If Prudential's automated system properly functioned (which is not disputed by any evidence in the record), the letter and form were mailed to Chumney. There is no evidence, however, that Chumney ever completed the form and returned it to Prudential. Prudential never received the form, or any other response, from Chumney. Neither Chumney nor HealthSouth paid any premiums to Prudential for the AD&D or GUL benefits that Chumney had requested on the earlier worksheet. There is no evidence that Chumney, after submitting the worksheet to her employer, ever followed up with either Prudential or HealthSouth.

B.

On August 14, 2007, Chumney was found dead in her home; her body had multiple gunshot wounds. Her husband was arrested and charged with her murder. Some time later, an attorney was retained by Chumney's sister-in-

law, the legal custodian of Chumney's two minor children, to probate Chumney's estate. The attorney sent a letter to Prudential informing it of these events and of pending interpleader litigation that had been filed in state court by State Mutual Insurance Company to determine the rightful owner of insurance proceeds to be distributed by that company. The attorney requested Prudential's participation in the litigation. The letter claimed that Chumney had enrolled with Prudential for not only Basic Life benefits, but also for AD&D and GUL benefits (although the letter did not explicitly use those names). The attorney's letter appears to be the first notice Prudential had of possible claims for AD&D and GUL benefits.

Prudential then filed an interpleader complaint in this federal court, claiming that Chumney was insured for Basic Life in the amount of $ 51,000 and the company was prepared to pay those funds and accrued interest to the proper beneficiary, the identity of whom would be

7

determined in the litigation; the interpleader complaint did not address AD&D or GUL benefits. Chumney's sister-in-law, as guardian for the minor children and as representative of Chumney's estate, filed a third-party complaint against HealthSouth and a counterclaim against Prudential, asserting, in short, that $ 140,000 of GUL benefits were due and that the two companies had violated fiduciary duties owed to Chumney. The third-party complaint against HealthSouth was dismissed and Chumney's sister-in-law elected to pursue Prudential alone. The counterclaim against Prudential was later amended to state that both AD&D and GUL benefits were due. The counterclaim asserts a single cause of action under 29 U.S.C. § 1132(a)(1)(B).[1]

---

1. Prudential paid into court $ 60,148.58, which represented the undisputed Basic Life benefits due plus interest. Prudential was discharged from further liability with respect to those benefits. Discharge and Disbursement Order (Doc. No. 78). Only the AD&D and GUL benefits are disputed in this litigation.

C.

By agreement of Prudential and Chumney's sister-in-law, the dispute over whether Chumney's children and estate are entitled to AD&D and GUL benefits was submitted to the court for resolution on a jointly prepared record, without a trial, but after briefing.

II. DISCUSSION

A.

The parties dedicate significant space in their briefs to the proper standard of review for this court to apply in adjudicating Prudential's denial of AD&D and GUL benefits. The dispute centers around the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). There, the Court held that, in an ERISA action under § 1132(a)(1)(B), an employee-benefit plan administrator's denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan," in which case, the arbitrary-and-capricious standard is applied instead. Id. at 115. Chumney's sister-in-law asks this court to conduct de novo review, while Prudential argues for the deferential arbitrary-and-capricious standard.

There is no question that the plan at issue expressly grants Prudential "as Claims Administrator ... the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." Record (Doc. No. 74), Exh. 2, pt. 2, pp. 44 (AD&D) & 80 (GUL). The plan further states that, "The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." Id. On first appearance, this explicit grant of discretion would seem plainly to invoke arbitrary-and-capricious review. However, the unique posture of this case distinguishes it from the typical action under § 1132(a)(1)(B) and muddies the waters to some extent. In a typical case, a claimant

seeking benefits due under an employee-benefit plan will, first, before resorting to judicial remedies, utilize administrative procedures outlined in the plan.  Through this claims procedure, the administrator creates a record of factual findings and legal conclusions (for example, interpretations of the plan).  In the ordinary case, a judicial action is filed only after the administrator has made a final decision to deny benefits.  The court will then, after determining that the arbitrary-and-capricious standard is appropriate, apply it to the administrator's record.

Here, unlike the typical case, no claim was ever submitted to Prudential under the plan, and no administrative appeal was made.  The plan's administrative procedures were simply disregarded by both parties.  It appears that, after Chumney's death, Prudential was first made aware of possible claims for AD&D and GUL benefits on April 15, 2008, when Chumney's sister-in-law's counsel wrote a letter to Prudential (and

11

others) raising the possibility.[2]  There is no evidence in the record that Prudential requested use of the plan's administrative procedures.  Instead, Prudential filed an interpleader complaint asserting only that Chumney was insured for Basic Life benefits in the amount of $ 51,000.  The record makes clear that the plan's administrative procedures were never used.

It appears then that, when Prudential asks this court to apply the arbitrary-and-capricious standard of review, it contemplates the court's deferring to its litigation position, as opposed to conclusions embodied in a record

---

2. Chumney's sister-in-law now argues that the attorney's letter constitutes a claim under the plan's administrative procedures that went unanswered.  That argument cannot be correct.  The plan clearly requires that a "claim form" be used and the "instructions on the form" be followed, neither of which occurred here. Record (Doc. No. 74), Exh. 2, pt. 2, pp. 15 (AD&D) & 57 (GUL).  Moreover, the attorney's letter did not assert that benefits were owed to any particular beneficiary, but rather requested that "any benefits to be paid due to Mrs. Chumney's death be interpled into" pending litigation for the purpose of determining the proper beneficiaries. Record (Doc. No. 74), Exh. 3, p. 24-25. The attorney's letter plainly does not constitute a claim under the plan's administrative procedures.

made in the course of ordinary claim administration, as such a record does not exist in this case. Prudential cites no law supporting this argument. There appears to be no clear binding precedent in this circuit on the appropriate standard of review to be applied where the parties jointly bypass administrative procedures in favor of litigation, although other circuits have wrestled with similar situations. See <u>Nat'l Auto. Dealers and Assoc. Ret. Trust v. Arbeitman</u>, 89 F.3d 496, 498 (8th Cir. 1996) (applying <u>de novo</u> review where the administrator filed an interpleader action before rendering a determination on entitlement to benefits); compare <u>Alliant Techsystems, Inc. v. Marks</u>, 465 F.3d 864, 870 (8th Cir. 2006) (applying the abuse-of-discretion standard where the administrator first made an initial determination but subsequently filed an interpleader action). Fortunately, this court need not decide the appropriate standard of review, because whether it conducts <u>de novo</u> review or defers to the conclusions of Prudential, the outcome is

the same: Chumney did not properly enroll for AD&D and GUL benefits.

B.

It is well-settled that the party bringing an action for benefits under § 1132(a)(1)(B) bears the burden of proving entitlement.  <u>Horton v. Reliance Standard Life Ins. Co.</u>, 141 F.3d 1038, 1040 (11th Cir. 1998).  To determine whether a party is properly enrolled in a benefits plan and is entitled to benefits, the court must turn to the terms of the plan itself.

Here, the group contract between Prudential and HealthSouth provides that, "All of the provisions of the Group Insurance Certificate(s) ... apply to the Group Contract as if fully set forth in the Group Contract." Record (Doc. No. 74), Exh. 3, p. 83.  Group insurance certificates, which were created by Prudential for each individual HealthSouth employee, consist of two separate documents: the booklet and certificate of coverage.

14

Therefore, the language of the booklet and certificate of coverage controls as to entitlement to benefits.

The part of the booklet addressing AD&D (specifically, the "Schedule of Benefits" section, which describes the options for amounts of coverage employees can elect) provides: "The option for which you enroll will be reported to Prudential." Record (Doc. No. 74), Exh. 2, pt. 2, p. 13.  Citing this language, Chumney's sister-in-law argues that the  plan impliedly envisions AD&D enrollees completing the full enrollment process with HealthSouth (presumably on forms provided by HealthSouth), and then having their elections, already operable, reported to Prudential.  Although that interpretation is plausible, it is clearly incorrect when the clause is read in light of the rest of the booklet.

The "When You Become Insured" section of the booklet provides that an employee is not insured until she has "enrolled" and that, "For Contributory Insurance" (including AD&D) "<u>you must enroll on a form approved by Prudential</u> ...." Record (Doc. No. 74), Exh. 2, pt. 2, p.

15

18) (emphasis added). Chumney's sister-in-law argues that the enrollment worksheet, created by HealthSouth and completed by Chumney, constituted such an approved form. As both HealthSouth and Prudential representatives agree, it did not. It is irrelevant that Chumney successfully enrolled for Basic Life benefits without completing a form from Prudential, for, as the booklet makes clear, contributory insurance (for example, AD&D) requires enrollment "on a form approved by Prudential," while non-contributory insurance (for example, Basic Life) does not. The only form approved by Prudential for AD&D enrollment was the one sent to Chumney, which Chumney did not complete. Therefore, she did not enroll for AD&D benefits.

As to GUL benefits, the conclusion is the same. The part of the booklet addressing GUL likewise provides that an employee is not enrolled until she has "enrolled on a form approved by Prudential ...." Record (Doc. No. 74), Exh. 2, pt. 2, p. 60. That form would be the one

sent to Chumney, but which she did not complete. Chumney did not enroll for GUL benefits either.

Chumney's sister-in-law next argues that some form of relief is due because Prudential breached fiduciary duties by maintaining a confusing enrollment process or by failing to follow up with Chumney after she did not return the proper enrollment forms. ERISA imposes fiduciary duties that prohibit administrators from making affirmative misrepresentations; require them to provide complete and accurate information in response to participants' questions; and, generally speaking, demand that they act in the best interests of the plan participants. See, e.g., Varity Corp. v. Howe, 516 U.S. 489, 506 (1996) (finding a violation where the plan administrator "knowingly and significantly ... deceiv[ed]" beneficiaries); Jones v. American General, 370 F.3d 1065, 1072 (11th Cir. 2004) (collecting cases).

Here, the facts do not make out a breach of fiduciary duties. The evidence reveals that Chumney was provided ample written notice that, after completing the October

17

2005 worksheet, additional forms would be required before she would be properly enrolled for AD&D and GUL benefits. The worksheet itself clearly stated so in the respective AD&D and GUL sections. Similarly, the "FlexChoice" booklet that was mailed to Chumney provided, under the "Next Steps" heading, that additional forms were needed to complete enrollment. As to the process for enrolling in AD&D and GUL benefits, there is no evidence in the record demonstrating that Prudential made any misrepresentations or failed to answer properly any inquiries from Chumney. On the other hand, it is also true that after Chumney used the worksheet to clearly express her intent to enroll for AD&D and GUL benefits, not once did Prudential follow up with Chumney to find out why she had not done so, despite having nearly two years to make an inquiry. Indeed, it is Prudential's ordinary practice not to make such inquiries. While this practice may reflect poor customer service, there is no basis in the law for finding that it rose to the level of breaching a fiduciary duty.

* * *

The evidence reflects that, because Chumney did not return the enrollment "forms" which Prudential sent to her, she did not properly enroll for the benefits claimed by her sister-in-law; merely completing and submitting a "worksheet" was not enough.  There is also no evidence that Prudential violated a fiduciary duty owed to Chumney.  An appropriate judgment in favor of Prudential and against Chumney's sister-in-law, as guardian of Chumeny's children and representative of her estate, will be entered.

DONE, this the 14th day of September, 2012.

                                      /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**